Good morning and may it please the Court, my name is Chris Wray and I'm an Assistant Attorney General with the State of Missouri. And today we're here to talk about Missouri's Tied House Law. Missouri's Tied House Law prohibits manufacturers and distributors from providing financial support to retailers. Nearly every state in the union, plus the federal government, have adopted such laws. The District Court, relying on an overturned Ninth Circuit panel decision, has struck down these laws. And that brings us to the appeal today. I would like to talk about the two statutory provisions, followed by the two regulations, and walk through why these laws pass constitutional muster in all cases. In part because in the case of the first statutory section, because this does not regulate commercial speech, but also because all four of them, regardless of whether they regulate commercial speech, survive under the Supreme Court's central Hudson precedent. So let's talk about subsection 1 of section 311.070 of the Missouri revised statutes. It is unquestioned, and it is a stated Supreme Court precedent, that states can mandate a three-tier distribution scheme and exercise of their authority under the 21st Amendment to the U.S. Constitution. That is from the Supreme Court's Granholm case, and it is well-established case law. It's the law of the circuit, and it's well-established around the country. Tied house laws are designed to prevent harm. Before the era of prohibition, tied house laws, there was a situation where there were local monopolies within the liquor business, and there was also a concern with the social and political evils of alcohol. Specifically, there was a concern where upstream manufacturers and wholesalers and distributors would have a relationship with the retailers that was improper and was driving the retailers to make irresponsible decisions. It made it more likely that alcohol was being sold to minors, alcohol was being sold at more dangerous hours, and alcohol was being oversold. Missouri, like I said, joined most states in the Union in the post-prohibition era by passing a liquor control statute, and that liquor control statute prohibited in various forms certain advertising, and it also prohibited a financial entanglement between those upstream in the distribution model and those retailers. I know you were going to get to this, but you said it prohibits certain types of advertising, so haven't you essentially conceded that it's a limit on commercial speech? So the regulations, we concede that they are a regulation on commercial speech, yes, Your Honor, and I would agree that subsection 410 of the statute is an exception that allows a type of regulation on commercial speech, but subsection 1 of the statute is not a regulation on commercial speech. I was just going by what you said. You said that they passed statutes to limit advertising. I mean, isn't that essentially an admission that this affects advertising, and if it affects advertising, one thinks it would affect commercial speech, because that's a prototypical commercial speech. The statute and the regulations, in part, do regulate advertising, but subsection 1, which is one of the four laws at issue in this case, it does not directly regulate commercial speech. It's actually an economic regulation. It goes directly to financial entanglements. The statute says that those upstream may not directly or indirectly loan, give away, or furnish equipment, money, credit, or property of any kind except ordinary commercial credit for liquor sold to such retail dealers. So I want to talk about what this statute means and why it survives, even if this court were to apply the Central Hudson Test. The first two prongs of the Central Hudson Test, which go to whether the commercial speech at issue concerns unlawful activity or is misleading, and then the second prong, whether the government interest is substantial, those are well-established in case law. The really interesting prongs, and this is discussed at length in the Ninth Circuit's decision, are the third and fourth prongs. The third prong is what I'll discuss first, whether the challenged statute directly advances the government's asserted interest. Here, the district court applied what is basically a balancing test. Now under the precedent of this court, including the case law in this court's previous appearance in this case, what the court said is it just has to advance a government interest. There has to be a reasonable fit, and you can look at history, and you can look at consensus with other regulations. This is not a balancing test. It's never been a balancing test, yet the district court said that the regulations exceeded any, sorry, the speech exceeded any direct benefit of the regulatory scheme. Counsel, could I ask you about the statute? I know you're in the statute right now. You've been talking about the regulation too, but isn't the statute the one that requires that if a manufacturer advertises liquor, or beer, or whatever, and mentions a retailer in the area, they have to mention at least two? Yes, that's the second subsection. Okay, so here's my problem with that. My problem with that is I'm not even sure we're in the commercial speech land. I think we might be in compelled speech land, and I'll just give you, and this has been preserved because it was in the original panel opinion. If you, we recently said in Telescope, for example, if the condition of speaking is saying something that the government requires you to speak, that falls under strict scrutiny in compelled speech. And so the analogy here would be if you say something and say, oh, we want you to go to Joe's Liquor Store. They carry our complete line of liquor stores. They sell at below cost, or not below cost, below retail price. They're very inexpensive. You have to say not only Joe's Liquor Store, you have to say, oh, by the way, Sally's Liquor Store too. That's compelled speech under our precedent. Respectfully, Your Honor, I disagree. I don't think it's compelled speech. I don't think it's compelled association. I think what this is is compelled disclosure. If you're going to advertise for one retailer in particular, what this statute says is you would have to advertise for more than one. And these upstream members of the distribution scheme, the three-tiered scheme, they have more than one relationship because of the interests of part one. But what if they don't like Sally's Liquor Store? What if Sally's Liquor Store, they've gotten a lot of complaints about Sally's Liquor Store not carrying it, or you call up and Sally's Liquor Store says, yeah, we've got your beer, and then they show up, and it reflects back on the manufacturer. You're forcing them to come up with the other retailer or another retailer that they want to support. Yeah. Most of these up-channel distributors, manufacturers, wholesalers, most of these parties have more than one liquor store that they're dealing with. They may not like Sally's Liquor Store, to borrow your hypothetical, but what they can do is they can advertise, as long as they advertise for more than one, they can advertise with the ones that they like. In other words, you just can't do it with one. The goal here is to make the value of the advertising de minimis. The goal here is that if the advertising is applying to multiple retailers, it doesn't financially entangle just one retailer. You're trying to keep it to a minimum. I understand that. One of the ways you're doing that is by saying to the manufacturer, if you advertise, we're going to compel your speech, and we're going to make you say something that you don't want to say. Correct. It is conditional in the notion that you have to be advertising to begin with. Nothing here compels advertisements at all. Then that falls right into our telescope prohibition. That's the problem. Then we're in compelled speech land, if you're right about that. It is true. They don't have to advertise. This is an exception that allows them to advertise. They are free to advertise their products. They're just not free to advertise it with one sole retailer. This regulation, or the statute, it allows nearly all speech. They're allowed to advertise their products. They are even allowed to advertise in connection with retailers, but what they have to do is, if they're going to do that, they have to make it de minimis by advertising with more than one to avoid those financial entanglements that were present in the pre-prohibition era. We don't think it's compelled speech, Your Honor. We think it's just compelled disclosure if they choose to engage in that type of speech. Well, if it is a compelled disclosure, did the district court do the right analysis? It seems that we shift from Central Hudson to the Zotter case, correct? I'm not sure about that, Your Honor. I do think that the district court made a incorrect analysis here, and that the district court says that it's compelling speech, whereas we think it's just a compelled disclosure. We do think the district court's analysis is improper. We also think, and this is why we're discussing subsection 410, we do think this would be an advisory opinion of this court. This is just an exception to the scheme that is put out in subsection 1 of 311-070. If this court finds subsection 1 to pass constitutional muster, either under Central Hudson or by saying it's an economic regulation, this is just an exception to that provision. Any decision that would come out in favor of the plaintiffs on this point would run into an issue with subsection 1, and thus this even striking down 410 wouldn't actually give plaintiffs any redress. You don't think we have to look at those two together? We don't look at the exceptions along with the main provision? We don't look at them as a whole? I think you can look at them separately. I think the district court certainly did, and other courts that have looked in these areas have looked at different parts of the statute. And so, yeah, I think you can look at them separately, Your Honor. So returning to subsection 1, the district court's, you know, the fundamental flaw in their analysis was that they tried to apply this odd balancing test, and this odd balancing test led them astray in several regards. The district court said this is about commingling or picking favorites, but that's actually not what this is designed to do. It's designed to make sure that there's no harm among the competition, and it's also designed to prevent antisocial harms. Once again... Well, let me ask you about that. So you're saying the justification for putting two liquor stores in the ad versus one liquor store in the ad is to address social harms? In part, yes. Well, what's the other justification? What's the other justification? To keep it from providing a financial entanglement with the retailer. But what is... To me it's not intuitive that two versus one is going to enhance your social harms issue. So where is the evidence? Is there evidence in the record that you can point to that says if you put two retailers in the ad, there's less social harm than if you put one retailer in the ad? Or that's just something that comes from... Yeah, from wherever. I do believe this is mentioned in the record. I don't have a specific page citation, Your Honor. But what I will say is if you have two retailers mentioned in an ad, I would argue that that ad is half as good to each of them. And if you have three, it's two-thirds less good to each of them. And so... You may argue that, but what's the evidence? I may argue the opposite position. So we try to do things on evidence. Is there any evidence to support that argument? I don't recall a specific... That an ad that has two or three or four retailers is less effective than an ad that has one? Yeah. I mean, is there a specific page that I can point to? I do believe this is mentioned in the record. I can't point to a page site, but if I were suddenly to take out an advertisement for my law service, which I think assistant attorney generals are prohibited from doing, but I were suddenly to take out an ad, I wouldn't want to share that ad with several of my colleagues. In other words, the more prominently my profile is featured, the more valuable that advertisement is to me. And so I think that when we look at these advertisements, it does become more de minimis the more retailers you add to that regulatory approach. Would that be true even in an urban area? I mean, I have the same question that Judge Malloy said, but take St. Louis, for example. You may live 25 miles away from the one liquor store that they're advertising, but suppose they advertise two or four, and there's one that's right down the street. To me, that would seem to increase drinking, not decrease it. So respectfully, Your Honor, your hypothetical is apt because it certainly becomes more salient to you if you live closer to one of those liquor stores than the other. But respectfully, Your Honor, billboard spaces by the square foot or any advertisement is all about area and prominence. And if you're sharing that space, by definition, you are less prominent because you are sharing that space. And so respectfully, even though one of them may be more salient to you, it actually does reduce the value of your advertisement. So there's a value of the ad as a whole, and that becomes reduced. So it sounds to me like you're saying we need to take the intuitive economic argument or the argument you're making, that there's nothing specific, no expert that came in to talk about effective advertising? Yeah, there is no expert, correct. And no legislative findings or anything on that particular point? Yeah, Missouri doesn't typically have legislative findings in that sense. So are you saying that goes to more to the commingling or to the public health issue? It seems like, from Judge Strauss's example, saying public health, you're giving them more options for finding the alcohol, versus commingling, you're diluting the connection to the upcoming. I think, Your Honor, I think it does go more to the commingling than to the public health. Although, we do have evidence that advertisements in general, and as we turn to the regulations, this becomes an extraordinarily salient point. Advertisements in general do promote consumption of discounted liquor. Now, the plaintiffs proffered evidence, and we have some counter evidence, at trial, that overall consumption of alcohol does not increase with advertisements. And that's what the district court looked at when it evaluated these advertisements. But are you shifting to the regulations? Yes, I am. Sorry. Yes, Your Honor, I am shifting to the regulations. But that's where the district court erred in its analysis of the regulations. It said that there's no evidence that it increases aggregate consumption if you increase advertisements. But the state goal, the state goal here, is to reduce consumption of alcohol sold below cost or at a discount. Underage drinkers have limited financial resources. If there are advertisements that allow them to take advantage of those limited financial resources to buy alcohol at a discount, that encourages underage drinking. That's a pretty narrow goal, though. That's just underage drinking, right? True. That is underage drinking. There is a broader goal here, and there's significant evidence in the record that alcohol that is sold below typical price drives overdrinking. And that's a problem not just with minors, Your Honor, but also with adults as well. But that's an overall consumption argument, though. Correct. It is. It is an overall consumption argument. Although, alcohol that is more likely to be overconsumed is the real state goal here. And the Supreme Court has recognized that. Countless other courts have recognized that. And in fact, this court recognized that in the previous panel decision. Briefly, I will be reserving a couple minutes for rebuttal, but I would like to briefly mention plaintiff's motion to strike. The plaintiff's motion to strike is a misguided and inappropriate mechanism that misstates the record in numerous ways. Striking a party's submission is an extreme and disfavored measure. Plaintiffs cannot rip up the argument that their suit, if successful, would create a circuit split and threaten the laws of the federal government in nearly every state. So instead, they asked this court to strike almost all of the state's brief. New authority may be cited for the first time appeal in support of a legal theory that was raised at the trial court. That is this court's decision in U.S. v. Eagle Boy. The state listed pages and pages of testimony about the Coe study and about other evidence that was adduced. The opening brief complains now that many factual assertions are outside of the record. But then, in the reply on that very subject, they state, identifying purported record sources now in response to this notion is the concern. The plaintiffs here have an issue. Which is it? They say the plaintiff's motion to strike contradicts their motion. Are the sources not in the record, as they said, in their original motion? Or are they, like they claimed in their original motion, just now cited, like they claim in their reply? Are they not there? Or are they just now cited? That's an issue. And we think that the motion to strike should be overturned along with the submission of the case. I'll reserve the rest of my time for rebuttal. Thank you, Your Honors. Thank you. Mr. Stapleman? Thank you. Your Honors, I appear today on behalf of the Missouri Broadcasters Association and others seeking affirmation of the right to make available truthful, non-misleading, and useful information. It's the kind of information that's at the heart of our free enterprise system. Now, this Court, of course, addressed the issue two and a half years ago, came down with its decision at that time, remanded the case to Judge Harpool. Judge Harpool took this Court's ruling as a roadmap. And Judge Harpool took the case incredibly seriously and carefully. I personally feel he had good grounds for summary judgment. Judge Harpool said, no, I want a more complete evaluation of the facts at trial. He sent the message to everyone, get me the facts at trial. He also took very seriously the state's purposes, which were not as counsel represents today. The state's purposes, as given in the state statute, are to reduce alcohol abuse, underage drinking and overconsumption, and maintaining an orderly marketplace. Those are the purposes the state gave at trial, before trial, to this Court two and a half years ago, throughout this. The new purpose, the tautology, essentially, of only going after discount and below cost alcohol didn't even come up until the appeal. And of course, the state's real purposes are important purposes, preventing alcohol abuse. We can all agree with that. And I think Judge Harpool took it very seriously. And we all take it seriously, which is one of the reasons for this case. Because reducing truthful advertising does not have any effect on alcohol abuse. And yet the record is full of things the state can do, without suppressing truthful speech, that will reduce alcohol abuse, particularly educational programs. And just as one- Is it in the record that advertising does not affect overall consumption? That's- Judge, we had Professor Gary Wilcox, an endowed professor at the University of Texas. He has been studying this issue for 35 years. He testified to 11 different studies, many that he did, many that others did, that show conclusively that alcohol advertising, including price advertising, including discount advertising, does not affect consumption. And that was not controverted? It was not controverted in the least. And moreover, remember, the state would have to go another step, even if they were to show an effect on consumption, they have to go another step. As this court pointed out, page 301 of the prior ruling, an effect, an increase in consumption doesn't show an increase in alcohol abuse. There was no evidence of that at all, that extra step. As a matter of- What about underage drinking? Did the study show anything about effect upon underage drinking? Yes, Your Honor, I believe they do. I don't remember, because the state hadn't raised that as an issue at trial. So we weren't focused on the issue. But I believe there is some evidence of- Sure, there definitely is, because Judge, excuse me, Professor Wilcox testified there is no evidence of effect on alcohol abuse, which includes both underage drinking and overconsumption. He referred to that specifically. And I believe the Surgeon General's report is one that found no effect there. Another one was a report by a Washington University- Excuse me, it was a Federal Trade Commission, not the Surgeon General report, found no effect on alcohol abuse. And there is also another one that Professor Wilcox referred to. It's a professor at Washington University who Professor Wilcox said has studied this issue of alcohol abuse his entire career, and wrote a book and found no effect of advertising on alcohol abuse, either underage or overconsumption. But it does affect the type of alcohol, right? Well, it affects brands. I mean, otherwise, why would you advertise? Yeah, it affects brands. It affects brands, Your Honor. I don't know, when we say type, that kind of says beer or whatever. Well, brands. But it brands, absolutely. So the idea is you advertise, so you switch from Miller Lite to Budweiser, right? Right, exactly. And I think that's in, for example, some of the Supreme Court rulings. In Rubin v. Coors, I think Justice Thomas mentioned that brand shifting. I think it's mentioned perhaps in 44 Liquor Mart by Justice Stevens as well. It's very common. And of course, I think one of the things that particularly caught Judge Harpole's eye was Professor Wilcox showed one of his reports in a chart, alcohol consumption per capita has gone down in the United States for the past 30 years. There's been a 15% decrease in per capita alcohol consumption. During the same time, alcohol advertising has gone up by 400% in standard fixed dollars. So obviously, the alcohol advertisers are trying to get for their brand a piece of the diminishing market. There is no increase in market, certainly no increase in alcohol effect. Can I ask a preliminary question? I'm not, I should know this, but I want to make sure I'm clear. The statute at issue here is 311.070, right? Correct. And that includes a lot of this three-tier prohibitions, including manufacturer can't own the retailers, can't loan money to the retailers. Are those, is that part of the statute at issue in this case? Oh, I'm sorry. Yeah, well, that's my question. Is it just the advertising restrictions or is any of the other prohibitions in the statute about financial entanglements at issue? No, my clients are interested only in media advertising. We challenge only the restriction on media advertising and really that's the only thing that the commercial speech doctrine applies to. Whether the non-speech aspects of the tight house laws are appropriate or not, not an issue in this case. And while we're on the tight house laws, I think I ought to be, we clarify a little bit. There's really, counsel said nearly every state has a tight house law. Well, first of all, that's not in the record. And the state laws are so different, to classify them together is somewhat misleading. I have California's here, which did not become an issue until the appeal. The word California and the statute were never mentioned at trial. California's comparable portion to 311-070 is this 34-page chapter. It does include two lines on this page here that refer to something that Missouri has nothing on. This is direct payments from manufacturers to retailers for inside store advertising. That's what was issued in the digital realty case, I'm sorry, the digital retail case. Nothing comparable to that in the Missouri statute. And what happened was at a trial, the state's theory was, well, we think the federal law is similar to the Missouri law, and the federal law is still standing, although it's never been challenged on commercial speech grounds. So therefore, you should approve our law. Well, when they raised that, we briefed it, and we pointed out that the federal law is actually almost the opposite of the Missouri law. The federal law says you may not make payments that constitute so much payment that you now have influence over the retailer such that the retailer does not buy from your rivals. That's the federal law. The Seventh Circuit decision, in foremost, explains it in great detail. So we fought the federal law. We had testimony at trial about how the federal law was different. The state had to admit that it was different. Nothing about the California law. The state never raised it. That's all on appeal, as many of the things are, and that's the reason for our motion to strike. I have never seen a case with so many new arguments, new facts on appeal. So we've essentially had to write two briefs rather than one, one for the case we tried and one for the case on appeal. But then the other interesting thing about the Tide House laws is that they are, as counsel mentioned, a throwback to a problem pre-prohibition. And the interesting thing is their state witness admitted that. I refer you to page 255 of the transcript where Mr. Schlar, the state witness, said, we haven't had the direct relationship problems that I think they have prohibition. So he's admitting that these problems that are the alleged basis for this drastic effect on speech are not even problems today. And of course, we had a huge amount of evidence showing that there are many, many Tide, many, many one-tier relationships today that the state of Missouri allows, in fact celebrates. Pre-prohibition, you had saloons run by manufacturers. In 21st century Missouri, you have the Augusta wineries, you have the proliferation of microbreweries, you have so many successful one-tier operations without problems. So the whole basis for the one-tier system, the Tide House law, doesn't exist anymore. I'd like to ask you a question to follow up on Judge Malloy's. There is some debate between the parties on facial challenge and as applied. And if I understand correctly, you have an as applied challenge to the statute. But I didn't see a response to their point on the regulations. Is that a facial challenge? Absolutely, Your Honor. We are challenging every bit of the regulations. They say no media advertising of truthful facts. And I don't see any way anything could be left of that. Now, they say, well, there could be false facts. But gosh, if that were the, if that would make something an invalid facial challenge, then Coors was wrong because there could be false statements of, about the strength of beer. Or 44 Liquor Mart would be wrong because there could be false prices advertised. Yes, we challenge everything about the regulations. Everything about the regulations is invalid. Let me go back to one more thing to follow up on the questions that Judge Strauss had with opposing counsel. It seems that opposing counsel is making it very clear their objective was to chill and prohibit advertising or inhibit advertising. They basically said, we want to make ads ineffective. We want to quash truthful speech. That's a classic problem. And it's a classic problem, particularly when there's a compelled speech element. Counsel also said, well, they can say it allows nearly all speech. But no, it doesn't. It compels speech on the one hand and prohibits price on the other hand. And we have testimony from multiple witnesses that price is the information that consumers find most valuable in advertising. Do you agree that it's less a compelled speech issue than it is a disclosure requirement? No, I don't, Your Honor. I believe, here's how I see the issue. And I think the telescope case is pretty interesting. I realize two of the judges here are different opinions in that. But whether we take the strict scrutiny as Judge Strauss found or the intermediate scrutiny as you found in telescope, I think those are clearly, either one may be an appropriate situation for compelled speech. The Zarater case is a professional speech issue. Zarater was an attorney. And subsequent cases under Zarater have all been professional speech cases where there are somewhat non-controversial, that's actually a word from the Zarater test, non-controversial additional disclosures. So it's usually, this is an attorney ad, we're going to require disclosure about, you don't need to make a hasty decision about an attorney. But if you go back to the NIFLA case, the NIFLA case is the most recent case on this issue. They explain very clearly what the situation is. And if it drowns out, if the compelled speech drowns out the person's message, the counsel essentially admitted that. We're making this de minimis, we're making this ineffective. Then it does not meet even the Zarater test. So Zarater is not the proper test because it's a professional speech additional disclosure case. So in your view, Zarater has never been applied outside? It's never been applied outside of the professional speech context? I haven't done a full analysis, Judge Kelly. Although what I found very helpful, and I'll refer the court to as a decision, American Beverage Association versus City and County of San Francisco, 9-16-749, decided by the Ninth Circuit this year. Judge, it could as concurring opinion, I found particularly illuminating. And I divine from that, that yes, Zarater is really just professional. But I haven't done the complete research. So wouldn't the analogy here to the professional be, suppose you required somebody who is doing lawyer advertising to say, and let's say you want to say we're personal injury specialists. And then the state said, well, we want to make sure that potential litigants have a full panoply of menu options. So in your advertising, you had to say, and oh, by the way, here's six other personal injury lawyers in the area who could also service your claim. I mean, this seems very different than, oh, by the way, you don't have to make a hasty decision, or there's certain ethical rules we have to follow, et cetera. Exactly. I think that's exactly right, Your Honor. I can't imagine an ad in which I say, please hire me as your lawyer, Mark Sableman, or also Christopher Rye. Seems like an odd thing. So let me go back to where I was with Judge Harpole. Judge Harpole really wanted evidence. Couldn't have been more clear about it. We gave him lots of evidence. Professor Wilcox, a seminal professor in this area. We had witnesses from the media, witnesses from the alcohol industry. We had lots and lots of documentary evidence about all the inroads on the three-tier separation in Missouri. Hundreds, literally hundreds, of things where there's a one-tier system now. We got admissions from the state. There was no effect on public safety, and that was one of their themes at trial, that somehow they needed a three-tier system for public safety. He said, no, you're 100% safe under one-tier systems. We got lots of admissions about alternative grounds. Mr. Hendrickson, the state official, admitted to 14 alternatives to the regulations where they could satisfy the objectives of the regulations without suppressing speech. He admitted to six alternatives to the Tidehouse statute effect on speech and said all those could handle and meet the state's objective without suppressing speech. There actually are others because there's more evidence in the record that there are other existing regulations that limit oppression by vendors over retailers. So we had plenty of those things. And then finally, we had some amazing objectives of examples of how the statute and regulations create problems for innocent and well-meaning people. The Springfield Civic events are amazing. In those events, the Springfield Downtown Association gathers together a whole bunch of retailers and gets money from various sources and says, we're going to have a special downtown event, St. Patrick's Day, Cinco de Mayo, Halloween, and then various restaurants, bars, and other businesses participate in this. It turns out that the restaurants and bars that participated in several of these didn't realize that some of the funding to the Downtown Association had come from a beer wholesaler. And the ads for it, while they actually happened to mention multiple retailers and happened to not have prices, they mentioned the names a little too conspicuously of the retailers. So the state of Missouri went down there and filed administrative cases against 20 or so retailers in each one of these various events. They were called to task. They had administrative hearings in Jefferson City. They had civil penalties. They had some kind of civil order against them. And letters were sent to the Greene County prosecuting attorney saying you may want to consider criminal prosecutions against these people. It's admitted in the record that many of these people didn't even know that a retailer had participated or that a wholesaler had participated. Clearly, there was no possibility of undue influence if these people were being punished. Let me give you another example. That's on the statute, why the statute regulation is crazy and cannot possibly satisfy the Central Outset Test. On the regulations, Schnucks has a little cardboard carrier when you buy six bottles of wine. And the cardboard carrier says on there, 10% discount when you buy six. It also has a little starburst that says 15% discount on Wednesdays. So one of these days, Schnucks ran a newspaper ad. One of these big newspaper ads. And it had ham and chicken and potato chips and Thai detergent. And at the very bottom, it said, here's our little carrier. You can buy six, I don't know, what did they say? They didn't say anything about discounts. The state went after them because on the starburst, which said 15% was visible, that was a discount. And they went after and had a proceeding against Schnucks against multiple stores. Schnucks had to go to administrative hearings, enter in an order. Clearly, this is truthful advertising, was no inducement to alcoholism. This is how crazy these laws are. So anyway, we gave Judge Harpo lots of facts. The state did not. The state now argues undue influence. It's in the state's brief 73 times. They forgot to mention it in their case at trial. The words undue influence did not appear in any of their direct examinations. Are you making, you know, you cited these examples that you view as being overzealous enforcement or whatever. Is your point here that on its face, these regulations and statutes go too far, or that based on the enforcement, it's unclear how far they go, and therefore, it doesn't provide proper breathing space for speech? In other words, somebody who might be on the right side of the line may not speak out because they're not sure exactly what the Ethics Commission and others might do on this. Well, really, Your Honor, the enforcement goes to how the state understands the law. The state understands the law as a categorical thing. If you fit in these categories, even if there's really no real effect, even if there's no harm in society, they are gonna go after it. That just shows how bad the statute is. If we had a law like the federal law that said it's illicit to provide so much money to a retailer that you control the retailer and you're freezing out your competitor, that would be one thing. But what they have here is a law that says, if you do anything, we go after you. We prohibit your truthful speech, even though there's no harm. It's not so much overzealous enforcement. It's, I guess, honest enforcement of a terrible law. Okay, that helps. Your Honor, I could go on and on. Let me just conclude. We're talking about very truthful, important speech. We're talking about a situation where the Supreme Court has put the burden of proof on the state. The state has totally failed to meet this. We are concerned about the underlying concerns of alcohol abuse. Those can be met well with educational programs, and there's lots of evidence of that. All we're asking is that the state not chill truthful speech, and instead put its resources into really solving the problem, which is totally doable. Thank you. Thank you. Thank you, Your Honor. Just a couple of brief points. The opposing counsel just said that the state wants to, quote, quash truthful speech, and wants to, quote, crowd out speech. That's simply not true, and it's never been true, and that's a claim completely unsupported in the factual record. They said that undue influence is just now raised on appeal, but that's not true. If you look at page 126 of the trial transcript, you will see the state expressing a concern with the undue influence that is so prevalent in the three-tiered system, and that led this state, like many other states in the union, to adopt the Tide House Law. Is that an assertion of undue influence, or is that where there's actually evidence showing that this law prevents undue influence, which is already there? It's both, Your Honor. It's mentioning the undue influence, but it's also talking the transcript, and then you can see in our opposition on the motion to strike, you can see numerous citations where there's evidence about sort of undue influence. I would like to briefly discuss the importance of this case, and discuss why our statute survives. This statute is very similar to the statutes of other states and the federal government, despite what opposing counsel just said, and just like the Ninth Circuit's case, which they tried to minimize, the Ninth Circuit's in-bank decision, this case goes directly to the overriding purpose of these statutes and the similar regulations. This court, if it were to follow the district court's misexample, would be creating a circuit split and putting in jeopardy critical laws that were passed in a post-prohibition era designed to prevent the ills of drinking. Counsel, can I ask you about the undue influence point, just because you ended on that? The federal statute has language that targets undue influence, so it doesn't seem concerned so much with just the three-tier system, but the three-tier system used in a way that sort of messes with the market. This one doesn't contain that, any of that type of language. So it may be a purpose, you may have asserted a purpose, but it doesn't contain that language. Did the California law contain that language at all, or anything that suggested undue influence needed to be present in order to have a problem under the statute? If I may shift, yeah, Your Honor. So I don't know whether the California law explained that, but if I can briefly explain Missouri's issue here. Missouri, unlike the federal statutory scheme, Missouri often does not have sort of announcements within its statutes explaining why a state adopted a particular law, but it is clear from the history and the fit of the statute that undue influence is what they sought to obtain, and no part of the statute goes to that more than subsection one, which is designed to deny those financial entanglements, and then subsection 410, which is designed to minimize the impact of advertising on creating those financial entanglements. Thank you, Your Honors. Thank you, Counsel. Thank you both, to both parties, for your argument and your briefing on this interesting and complicated case. We will take it under consideration. Thank you.